UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 13 |
| EVIS NEVERLANE STEPHENS, | Case No. 1-21-42857-jmm |
| Debtor. | Hearing: September 17, 2026, 3:00 p.m. |

--------------------------------------------------------------------X

**AFFIRMATION OF KARAMVIR DAHIYA IN SUPPORT OF COUNSEL'S RESPONSE TO THE CHAPTER 13 TRUSTEE'S AFFIRMATION (ECF NO. 82) AND IN OPPOSITION TO THE DEBTOR'S MOTION TO REVIEW ATTORNEY'S FEES (ECF NO. 78)**

KARAMVIR DAHIYA, an attorney admitted to practice before this Court, affirms the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the principal of Dahiya Law Offices LLC ("Counsel"), counsel to the Debtor, Evis Neverlane Stephens (the "Debtor"), in this Chapter 13 case and in the related adversary proceeding, Stephens v. Bonaparte, et al., Adv. Pro. No. 1-22-01037-jmm (the "Adversary Proceeding"). I make this affirmation from personal knowledge and from the files of my office and the dockets of this Court. I submit it in support of Counsel's Response to the Affirmation in Support of Motion to Review Attorney Fees filed July 17, 2026 by the Standing Chapter 13 Trustee (ECF No. 82, the "Trustee's Affirmation"; the "Response"), and in opposition to the Debtor's pro se Motion to Review Attorney Fees, Deny Fees Sought, Prevent Further Payments, and for Reimbursement of Fees Paid, dated May 28, 2026 and filed June 10, 2026 (ECF No. 78, the "Motion"), together with its exhibits (ECF No. 79). The Response is incorporated by reference. I respectfully ask that the Court accept these papers notwithstanding the deadline, as the undersigned was actively looking for the case records and files and notes in this case, some of which are still not retrievable.

## PRELIMINARY STATEMENT

2. The Motion asks the Court to deny "the $50,000 in attorney fees currently being sought," to bar "any further payment of funds to counsel," and to order "reimbursement of a portion of the $27,000 already paid." The Trustee's Affirmation adds that Counsel's Disclosure of Compensation of December 6, 2021 (ECF No. 9) understated pre-petition receipts and that no supplemental statement was filed after June 2023. It is important to be precise about what is and is not before the Court. No fee application is pending. No compensation has been awarded. Not one dollar has been paid to Counsel by the Chapter 13 Trustee or from property of the estate, because no plan has been confirmed and Proof of Claim No. 6 — the $50,000 claim the Motion describes as "being sought" — has never been paid in any part. What Counsel received before the petition was $12,000 from the Debtor in 2021, all of it applied to the non-bankruptcy work described below. What Counsel received after the petition, in June 2023, came from members of the Debtor's family for the family's own matters, in an amount I am presently verifying with the bank. Against that, Counsel's contemporaneous time records, from June 2, 2021 through September 9, 2026, reflect 453.90 hours of work at $650 per hour, a value of $294,864.55, and the work is not finished.

3. This affirmation sets out (i) what the Debtor retained me to do in 2021, why Chapter 13 was not then contemplated, and how the engagement was structured; (ii) the disclosures actually made to this Court, beginning December 6, 2021; (iii) the payments received, from whom, and for what; (iv) the representation of the Debtor's husband, daughter, and household in the Housing Court, the Supreme Court, and the utility matters; (v) the work performed and its results; and (vi) a response to each of the Debtor's specific complaints, drawn largely from her own exhibits. Where

my records are incomplete because of the office relocations described in paragraph 17, I say so, and I identify what is being done to complete them.

## THE ENGAGEMENT

4. The Debtor came to my office in May 2021. Her home at 127-06 177th Street, Jamaica, New York — a two-family house in which she lived with her husband Calvin Stephens, her daughter Jillen Stephens, and other family members — had been transferred by deed to 12706 Holdings Inc., an entity controlled by Lezantonio Woodburn and Maxine Bonaparte, in a transaction the Debtor understood to be a loan modification or foreclosure rescue. By the time she retained me the family faced: a holdover proceeding by 12706 Holdings against Evis and Calvin Stephens (Queens Housing Court, LT-059196-20/QU); a second holdover by Woodburn against the second-floor occupant (LT-058883-20/QU); a third proceeding by Bonaparte (LT-058417-20/QU); a $45,000 breach-of-contract action by 12706 Holdings and Woodburn against the family in Supreme Court, Queens County (Index No. 717483/2020); a harassment proceeding the family had brought pro se (HP Index No. 763/20), in which an interim order had issued on November 25, 2020; the purported new owner's "Eviction Letter" of May 5, 2020 and 10-day notices to quit of September 1 and November 2, 2020; the disconnection of utilities; and the underlying foreclosure. Copies are annexed as **Exhibit A**.

5. Chapter 13 was not planned when the Debtor retained me, and it could not have been. On June 2, 2021 the Debtor did not hold title to the house; the deed stood in the name of 12706 Holdings Inc. A person who owns no real property has no mortgage to cure and no residence to retain under a plan. What the Debtor retained me for was damages against the people who had taken the house, and the family's continued occupancy of it while those claims were pursued. The forum under consideration was a civil RICO action in the District Court or an action under the

Home Equity Theft Prevention Act, N.Y. Real Prop. Law § 265-a, together with N.Y. Gen. Bus. Law § 349 and N.Y. Judiciary Law § 487, in Supreme Court, Queens County. Each of those statutes carries fee-shifting or enhanced-damages provisions, and the engagement was structured on that basis: the Debtor could not fund litigation of this scale from her own means, and my compensation was to come principally from the wrongdoers.

6. The object of the engagement, as the Debtor and her family put it to me, was to keep the family together in the house. The proceedings I have listed were not directed at the Debtor alone. Her husband was a named respondent in LT-059196-20/QU and a defendant in the Supreme Court action; her daughter Jillen, who was expecting a child, lived in the house and was the person most affected when the utilities were later cut; the second-floor occupants had their own holdover proceeding. I assured the family that none of them would be evicted while the matter was pending, and I appeared for them in those proceedings as the need arose. The issues affected the non-debtor members of the household — the Debtor's husband and her pregnant daughter principally — as much as the Debtor herself.

7. The written retainer, dated June 2, 2021 and initialed by the Debtor on each page (**Exhibit B**), describes the matter as "Real Properties Recoveries and related claims of Evis Stephens." It does not mention bankruptcy. It provides for a $7,000 initial retainer; hourly rates of $700 for my time, up to $450 for counsel, and $350–$400 for associates; and, in addition to the hourly fee, twenty percent of any net monetary recovery after costs. Paragraph 4 provides that, unless invoiced, "the Firm shall not be sending any monthly billing statements without the instruction of the Client"; the Debtor gave no such instruction, and time was kept contemporaneously rather than billed monthly. Paragraph 12 provides that the agreement covers all services already rendered and to be rendered in the matter. Paragraph 14 gives the Part 137 fee-

arbitration notice. When the bankruptcy case was later filed, no new retainer was signed; the same retainer was used, and I reduced my rate to $650 per hour for the bankruptcy work.

8. The contingent component of the retainer has never been triggered. It attaches only to a net monetary recovery in the litigation if there was a winning on the fees shifting statutes and none has been received. I have never sought to enforce it. I state now, and will restate in the Supplemental Disclosure to be soon filed, that no contingent fee will be claimed or accepted in connection with this case or the Adversary Proceeding except upon application to and approval by this Court under 11 U.S.C. §§ 328 and 330 and non was to be accepted, as it was clearly reflected in the filed plan that the compensation will be sought only after approval of the same by the court.

**THE PRE-PETITION PAYMENTS AND THE WORK THEY PAID FOR**

9. The Debtor's exhibits show three checks in 2021: $7,000 on May 26, 2021 (check no. 776), $2,000 on June 8, 2021 (check no. 778), and $3,000 on July 13, 2021 (check no. 780) (ECF No. 79). I do not dispute them. All of that money was applied to research and work on the non-bankruptcy claims for which I had been retained — the investigation of the 2019 transfer and the persons behind it, the mortgage history of the property, the Housing Court and Supreme Court proceedings then pending against the family, and the HETPA, RICO, and related causes of action — and none of it was for a bankruptcy case, which was not then in contemplation. My time records show what that work was. On June 2, 2021, the day the retainer was signed, I reviewed the criminal indictment of Osmond Decorteau and the history of the Debtor's purchase of the house and of a parallel Brooklyn property, and researched the structured-financing and straw-buyer issues and the limitations problems they presented (2.20 hours). On June 4, 2021 I reviewed the ACRIS records of the transfer, analyzed whether the scheme was actionable under RICO in light of Second Circuit authority, examined Ms. Bonaparte's pattern of conduct and criminal history, and addressed, in

the words of the entry, the “eviction issues” of the “client with adult family members and other relatives” (4.90 hours). On June 17, 2021 I reviewed the factual chronology and analyzed the venue question — “RICO in the federal court or HETPA state court” — together with the statute of limitations on the Brooklyn property, and asked the Debtor for further documents (2.80 hours). That June 2021 work alone, 9.90 hours at the retainer rate of $700, consumed the initial retainer. Before the petition I also dealt with Con Edison’s threatened disconnection of the meter (September 29, 2021), spoke with Assistant District Attorney Christine Burke about the referral of the deed transfer to the housing-crimes unit and obtained the Attorney General’s deed-theft contact (September 29, 2021), and handled the Housing Court conference in the proceeding against Jillen and Calvin Stephens, writing to the court that the Debtor was the true owner and a victim of deed theft (October 12, 2021). The recorded pre-petition time is 11.20 hours; the work on the family’s matters recorded in the notebook referred to in paragraph 17 is in addition. The issues overlapped: the same facts underlay the eviction proceedings against the Debtor and her husband, the Supreme Court action against the family, and the claims against the wrongdoers, and the work served all of them.

**THE DECISION TO FILE**

10. The petition in this case was filed on November 15, 2021, five and a half months after the retainer, and the day before a scheduled appearance in the holdover proceeding against the Debtor and her husband, LT-059196-20/QU (Civil Court notice of November 4, 2021, Exhibit A; eCourts case summary, Exhibit F). By then the eviction proceedings and the foreclosure had reached the point at which the automatic stay was the only immediate means of keeping the family in the house, and the bankruptcy court offered a single forum in which the deed-theft claims could be adjudicated rather than four state-court actions on different tracks. Chapter 13 was chosen for

those reasons, late, and as a step within the engagement I already had — not as its object. The Court later exercised jurisdiction over the Adversary Proceeding, and the parties consented to the entry of final orders (Adv. ECF Nos. 180, 183, 184).

**THE DISCLOSURES MADE TO THIS COURT**

11. On December 6, 2021 I filed the Disclosure of Compensation of Attorney for Debtor on Form 2030 (ECF No. 9). The form's dollar fields ask for compensation "for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case." I completed them at $0.00. That was not an oversight; it was the answer to the question the form asks. Nothing had been paid for the bankruptcy case, because the $7,000 had been paid, months before any bankruptcy was planned, for the fraud, RICO, and Hobbs Act claims. I then disclosed that payment anyway in the narrative fields: "The Debtor had paid $7000 as an initial reta[i]ner [hourly] for making claims against perpetrator fraud upon, loss of her property, claims under civil rico and hobbs act"; "The debtor has agreed to pay as per the retainer"; and, as to services, "Governed according to the signed retainer." The Debtor's Statement of Financial Affairs, filed the same day and signed by her under penalty of perjury, answered Question 16 in the same terms: "Dahiya Law Offices LLC — $7000, not paid exclusively for bankruptcy. Hourly retainer signed by the clients recovery of the properties that they lost owing to fraud." (ECF No. 9, SOFA ¶ 16.) Copies of both pages are annexed as Exhibit H.

12. Every Chapter 13 plan filed in this case — each signed by the Debtor and served on the Trustee — states in § 4.3 ("Attorney's fees") that Counsel's fee is governed by the retainer and payable only on Court approval under § 330 (Exhibit G): the original plan of December 14, 2021 (ECF No. 11) lists the balance as "TBD"; the First Amended Plan of April 19, 2022 (ECF No. 27) as "as per retainer & court approval"; the Second Amended Plan of September 28, 2022

(ECF No. 50) as "as per 11 USC 330"; the Third Amended Plan of December 5, 2022 (ECF No. 57) as "650/hour"; the Fourth Amended Plan of December 8, 2022 (ECF No. 58) as "$650/hr signed retainer"; and the Fifth Amended Plan of March 13, 2024 (ECF No. 65) as "$650/hr signed retainer. An application shall be filed with the Court for payment of administrative expenses including attorneys fees," with plan payments "amended to pay legal fees ordered by the Court upon filing of Application." That last language was added at the Trustee's own request: the Trustee's Second Affirmation in Support of the motion to dismiss, dated March 7, 2024, listed as its first outstanding item an "[a]mended plan to put in 'to pay legal fee paid by Court Order.'" The hourly arrangement, the rate, and the fact that the fee would be paid only on application and order were therefore on the docket, in documents signed by the Debtor and reviewed by the Trustee, for years before the Motion.

13. Proof of Claim No. 6, filed December 5, 2022, asserts a priority claim of $50,000 for attorney's fees "to be paid over the period of plan." It was filed with the Debtor's written consent, given the same evening. At 6:03 p.m. on December 5, 2022, I e-mailed the proof of claim and the amended plan to the Debtor through her daughter Jillen Stephens with the instruction, "Please sign at the bottom of the page with a word consented and then put the name"; at 7:26 p.m. Ms. Stephens returned photographs of the signed pages — the proof of claim's signature page bearing "Consented → Evis Stephens," and Part 9–10 of the plan bearing the Debtor's signature dated December 5, 2022 (Exhibit D). The Debtor's own exhibit reproduces the same photograph (ECF No. 79). The annotation on her exhibit that the claim "was not explained and was rushed to sign" does not sit with a document she was sent, read, and returned with the word "consented" in her own hand. The claim has not been paid in any part. It was, and is, subject to review under 11 U.S.C. § 330(a)(4)(B) upon application before any distribution could be made on it. At the time it

was filed, recorded time stood at 132.90 hours, or $85,885; the claim was a conservative estimate of the bankruptcy-related portion of the fee, not the whole of it.

**THE JUNE 2023 PAYMENTS**

14. No funds have been paid to Counsel by the Chapter 13 Trustee. No funds have been paid to Counsel from any account of the estate. No payment was taken from the Debtor personally after the petition.

15. The Debtor's exhibits reproduce customer copies of two Chase cashier's checks of $7,500 each: one dated June 23, 2023 naming Evis Stephens as remitter, and one dated June 26, 2023 naming Calvin Stephens as remitter (ECF No. 79). I did receive a payment from the family in June 2023. I doubt that I received two cashier's checks of $7,500 each, and I have requested from the bank the records of deposit for June and July 2023 so that the Court will have the negotiated instrument or instruments rather than my recollection. I will file those records, with the Supplemental Disclosure described below, as soon as the bank produces them, and I will correct anything in this affirmation that they show to be mistaken.

16. The June 26, 2023 payment was made by Calvin Stephens from his own funds, on account of the eviction proceeding in which he was a named respondent and the utility matters affecting the household. As to the other payment, the Debtor has said that it was her daughter who made it, on account of the restoration of utility service to Jillen Stephens's rooms, Jillen then being pregnant. Neither payment was a payment by the Debtor from property of the estate for services to the Debtor in this case. The family understood, and I understood, that these were their matters.

17. My records of the family matters are incomplete, and I want to be candid with the Court about why. Between 2024 and 2025 my office moved three times in a short span — from 75 Maiden Lane to a Manhattan storage facility on 23rd Street, then into storage at Liberty Self

Storage, and then to 111 John Street. A notebook in which I recorded the work on the family's Housing Court, Supreme Court, and utility matters and the payments relating to them, together with loose sheets describing the steps contemplated if any non-debtor member of the family were evicted, has not yet been located. I am continuing to search for it. What I state above about the June 2023 payments is stated from memory and from what the family has told me, and I have said so.

**THE HOUSEHOLD MATTERS**

18. The Housing Court proceeding against the Debtor and her husband, LT-059196-20/QU, was conferenced on November 16 and December 6, 2021 and January 13 and 27, 2022; on January 13, 2022 Judge Guthrie learned of the bankruptcy from me at the conference and asked for the petition and creditor list, which I sent him that day; the case was marked off on January 27, 2022 and disposed on June 10, 2024 (Exhibit F). The second-floor proceeding, LT-058883-20/QU, was conferenced on October 12, 2021, when I wrote to the court that the Debtor was the true owner and a victim of deed theft. On April 13, 2022 — five months into this case — the Civil Court mailed the Debtor a notice scheduling a May 2, 2022 hearing on "the petitioners' motion to proceed with a warrant of eviction against you"; two days later 12706 Holdings moved in this Court to vacate the automatic stay "with prejudice" (ECF Nos. 25, 29). That motion was heard and adjourned from May 17, 2022 through August 17, 2023 and was never granted. Planet Home Lending's later motion for relief from stay (ECF No. 53) was likewise opposed from October 2022 and carried, without relief, until the conditional order of September 8, 2026 (ECF No. 89). In five years, with three holdover proceedings, a foreclosure, and two stay-relief motions aimed at the house, no warrant of eviction has ever issued against any member of the family.

19. In the fall of 2023 the electricity and gas serving the first floor were disconnected. The first floor is where Jillen Stephens lived, and she was expecting a child. The utility accounts stood in the names of Evis and Jillen Stephens. Because the disconnection was procured by parties to the Adversary Proceeding and the automatic stay was the available remedy, the application was brought in this Court, in the Debtor's name as plaintiff, by order to show cause (Adv. ECF No. 74); the Court's order of October 23, 2023 authorized the Debtor and her family to reside on the first floor and directed restoration of service (Adv. ECF No. 78); the ensuing dispute with National Grid was resolved by stipulation (Adv. ECF Nos. 84, 86), and National Grid's late claim was allowed on consent (ECF Nos. 61, 62). The person whose home and health were at stake in that proceeding was the Debtor's pregnant daughter; the Debtor was the party through whom the relief had to be sought.

20. The Supreme Court action, Index No. 717483/2020, was brought by 12706 Holdings and Woodburn against the family for $45,000 in alleged use-and-occupancy and damages. I was asked by the family to monitor that action and to take whatever steps were needed to protect the non-debtor defendants, and I did so. It has never proceeded to judgment against any of them.

## WHAT WAS DONE

21. The dockets of this case and the two adversary proceedings are the best evidence of the work performed. In summary:

- **Petition, schedules and plans.** Chapter 13 petition (ECF 1, Nov. 15, 2021); schedules and statements (ECF 9); five successive plans and amended plans (ECF 11, 27, 50, 57/58, 65) as the case evolved; amended schedules on four occasions (ECF 15, 20, 28, 64); opposition to the Trustee's motion to dismiss on three occasions (ECF 13, 22, 66); the Debtor's trustee-payment arrangements set up in January 2022, under which she

paid $43,900 to the Trustee through March 2024; and attendance at confirmation and motion hearings from January 2022 through August 2026.

- **The rescission notice and the County Clerk.** Preparation of the statutory notice of rescission under RPL § 265-a(8); when the Queens County Clerk refused to record it, a motion for an order directing the Clerk to do so (ECF 38–41), which the Court granted on June 28, 2022 and entered on July 14, 2022 (ECF 45). The recorded rescission notice is the foundation of the Debtor's claim to the house.
- **The $55,000 claim.** Objection to Claim No. 5 of 12706 Holdings Inc. (ECF 30), sustained; the claim was disallowed and expunged (ECF 48, Aug. 19, 2022).
- **Stay relief.** Opposition to 12706 Holdings' motion to vacate the stay (ECF 25, 29) from April 2022 until it was abandoned in 2023, and to Planet Home Lending's motion for relief from stay (ECF 53) from October 2022 (ECF 54, 56, 85) through hearings on December 1, 2022, January 24, 2023, March 19, 2024, May 16, 2024, June 12 and August 14, 2025, October 21, 2025, and August 6, 2026. The family has remained in the home throughout; the Court granted only conditional relief on September 8, 2026 (ECF 89).
- **The Adversary Proceeding.** Complaint filed May 9, 2022 (Adv. ECF 1); amended complaint adding the lender defendants (Adv. ECF 28); opposition to three motions to dismiss (Adv. ECF 42, 43, 55, 56), resulting in the Memorandum Decision of March 23, 2023 sustaining the core claims against Mester (Adv. ECF 54) and the Order of January 12, 2024 sustaining claims against the lender defendants with leave to amend (Adv. ECF 83); the Second Amended Complaint and Revised Second Amended Complaint (Adv. ECF 90, 93); Rule 26 disclosures, document demands, interrogatories, and responses; court-ordered mediation, including a full-day session on July 24, 2023; the utility order to show cause, granted on October 23, 2023 (Adv. ECF 78); answers to two sets of counterclaims (Adv. ECF 100, 146); plaintiff's motion for summary judgment (Adv. ECF 152, 154, 155) and oppositions to three defense motions for summary judgment (Adv. ECF 168, 171, 173) with three replies (Adv. ECF 174–176), argued January 27, 2026; and, following the Court's decision of July 1, 2026 (Adv. ECF 185), the pending motion to alter or amend and for reconsideration (Adv.

ECF 186, reply at Adv. ECF 200), set for argument September 22, 2026, and the motion for default judgment against the non-appearing defendants (Adv. ECF 187), which is being renewed.

- **The Mester turnover proceeding.** A second adversary proceeding to compel the Debtor's former attorney to turn over her file (Adv. Pro. No. 1-23-01018), resolved when the file was produced; and, on August 27, 2026, a settlement agreement with Mr. Mester, signed by the Debtor after the Motion was filed, under which the claims against him are resolved.
- **The household matters** described in paragraphs 18–20 above: the Housing Court conferences of October 12, November 16, and December 6, 2021 and January 13 and 27, 2022; the Supreme Court action; the utility restoration; and the steps taken toward a criminal referral of the deed transfer to the Queens District Attorney and the Attorney General's deed-theft unit beginning September 29, 2021.

22. My contemporaneous time records for this matter, from June 2, 2021 through September 9, 2026, comprise 232 entries totaling 453.90 hours, a value of $294,864.55 at $650 per hour. A summary by year is annexed as **Exhibit C**; the itemized records will be filed with the fee application described below and are available to the Court and the Trustee now on request. By year, the time is as follows:

| **Year** | **Entries** | **Hours** |
|---|---|---|
| 2021 | 11 | 20.20 |
| 2022 | 66 | 123.60 |
| 2023 | 71 | 120.40 |
| 2024 | 29 | 61.70 |
| 2025 | 22 | 61.10 |
| 2026 (to Sept. 9) | 33 | 66.90 |
| **Total** | **232** | **453.90 ($294,864.55)** |

23. Those records do not include the family matters recorded in the notebook referred to in paragraph 17, which will be added if and when it is found. When the June 2023 payments were received, recorded time stood at 227.10 hours ($147,115); the payments were consumed many times over by the work that followed — the July 2023 mediation, the October 2023 utility

proceedings, discovery, the amended complaints, and the summary-judgment practice of 2025–2026.

24. The measure of that work is the family's situation today. The Debtor came to me in 2021 with the deed to her home recorded in a stranger's name, three eviction proceedings and a foreclosure pending, and a $45,000 damages action against her family. Nearly five years later the family is still together and still in the house; no rent and no mortgage has been paid in that time; no warrant of eviction has ever issued; the $55,000 claim against her estate is gone; the rescission notice is of record; the claims against every defendant group survived dismissal; the utilities were restored by court order; the first defendant has settled; and the case against the remaining defendants is proceeding to a decision on the merits, with the motion to alter or amend set for argument on September 22, 2026 and the default-judgment motion being renewed. The Debtor and her family are victims — of the people who took the house, not of the lawyer who has spent five years trying to get it back.

**THE SUPPLEMENTAL DISCLOSURE AND THE FEE APPLICATION**

25. Without conceding that any further disclosure was required, and because the better practice is to err on the side of disclosure, I will file a Supplemental Disclosure of Compensation within fourteen days of the filing of the Response, without waiting for an order. It will identify every payment received from any source since May 2021 — its date, its amount, its source, and the matter to which it was applied — and it will annex the bank's deposit records for June and July 2023 when received. It will also disclose the contingent provision of the retainer and the undertaking stated in paragraph 8 above.

26. I will file an application for compensation under 11 U.S.C. § 330(a)(4)(B) within thirty days of the hearing on the Motion, with itemized time records, a narrative of the results

obtained, and a segregation of (i) time on the bankruptcy case proper, (ii) time on the Adversary Proceeding and the Mester proceeding, and (iii) time on the Housing Court, Supreme Court, and utility matters that concerned members of the Debtor's household in addition to the Debtor. If the notebook is recovered in the meantime, its entries will be included and identified as such. The Debtor and the Trustee will have full opportunity to object, and the Court can then determine the reasonable value of the services on a complete record.

## RESPONSE TO THE DEBTOR'S SPECIFIC COMPLAINTS

### A. Communication

27. The Motion states that Counsel "failed to respond to telephone calls, emails, and messages in a timely manner." The Debtor's own exhibits show the opposite. Her exhibit reproduces an e-mail from her daughter sent at 3:09 p.m. on May 24, 2022 asking what a document meant, and Counsel's reply at 9:56 p.m. the same evening; the daughter's acknowledgment the next morning; and Counsel's e-mail of May 27, 2022 at 5:52 p.m. to the Debtor, her daughter, and Mr. Cooper explaining, step by step, what needed to be done at the County Clerk's office and why it was urgent (ECF No. 79). I regret that the May 24 reply was brusque in tone; it was sent late in the evening, within seven hours of the question, and it answered the question.

28. Beyond the e-mails the Debtor chose to annex, the record shows: office conferences with the Debtor on February 2, 2022 (preparation of amended schedules and affidavit), April 6, 2022 (the Debtor and Mr. Stephens in the office from approximately 11:00 a.m. to 4:51 p.m. reviewing the property history and the complaint), April 19, 2022 (with the Debtor and her daughter), and May 14, 2024 (review and execution of interrogatory responses); the Debtor's attendance with Counsel at the hearings of September 15 and 22, 2022 and October 18, 2023, and at the July 24, 2023 mediation from 10:00 a.m. to after 3:00 p.m.; telephone conferences with the

Debtor and her family too numerous to list, the most recent on June 28, 2026 with the Debtor, Mr. Stephens, Jillen Stephens, and Marcia Stephens; and the transmission of every filing of consequence to the Debtor for her review or signature — including the plans, her affidavits, the interrogatory responses, and the declarations filed August 26, 2026, which she and her daughter executed the same evening. In April 2022 I sat with the Debtor over several sessions and took down her account of the events from 2005 forward — some fourteen pages, in her own words — which became the factual spine of the adversary complaint (Exhibit E, excerpt). And the attorney-client relationship has continued in the ordinary way since the Motion was filed: on August 27, 2026 the Debtor signed the Mester settlement, and on August 26, 2026 she executed the supplemental declarations for the reconsideration reply. A client who will not communicate with her lawyer does not sign his settlements.

**B. Court dates and case management**

29. The Motion states that the Debtor "was not kept informed of upcoming court dates." The Debtor appeared at hearings on February 24, 2022, September 15, 2022, October 18, 2023, June 18, 2026, and June 23, 2026, as the docket reflects, and she registered for and attended the videoconference hearings on her own motion. The hearings in this case have been adjourned dozens of times at the instance of the Court, the Trustee, or the creditors; Counsel advised the Debtor of the dates that mattered and appeared at each of them, in this Court and in the Housing Court. The Debtor had been told about what was happening. Debtor knew what was happening and in between unfortunately the undersigned had to close the office for one year.

30. The Motion also states that the Debtor was "advised to file many of my documents without counsel's assistance." The only document the Debtor was asked to handle personally was the delivery of the rescission notice to the Queens County Clerk in May 2022, when the Clerk was

refusing to accept it and the property was, on information received, about to be re-conveyed to a third party. The e-mail of May 27, 2022 that the Debtor annexes is that instruction. When the Clerk refused the notice, Counsel obtained a court order compelling its recordation (ECF Nos. 40, 45). Every other document in this case and in the adversary proceedings — several hundred pages of pleadings, motions, and briefs — was prepared and filed by Counsel. The Debtor's decision to file the present Motion pro se, while represented, was her own.

**C. The Trustee's document requests**

31. The Motion states that Counsel directed the Debtor to contact the Trustee to find out what documents were required. The Trustee's office had provided the list; the difficulty was that the Debtor's tax returns and bank statements were incomplete and had to be obtained from her preparer and her banks. Counsel's records show Counsel personally obtaining the 2018–2020 returns from the Debtor's preparer, redacting them, and uploading them to the Trustee's portal (February 24, 2022); spending most of March 31, 2022 with the Debtor by telephone while she obtained her Chase and Bethpage statements at the branch, then redacting and uploading them; and conferring with the Trustee's staff attorney about the remaining items the same day. The Debtor was asked to call the Trustee's office only to confirm which items remained outstanding after those uploads.

**D. Fees and billing**

32. The Motion states that Counsel "failed to provide requested documentation or billing information" and that the fees sought "were neither disclosed nor explained in advance." The hourly arrangement was explained and agreed at the outset and is set out in the written retainer the Debtor initialed on every page; the $50,000 proof of claim was shown to the Debtor and consented to by her, as her own exhibit records; and the Debtor was told, throughout, that the

litigation was being pursued on the footing that the fee-shifting statutes would bear its cost. The retainer provides, at paragraph 4, that the Firm does not send monthly billing statements unless the client instructs it to; no such instruction was given, and the monthly invoices the Court asked about on June 18 do not exist, because the engagement was never run that way. What does exist is the contemporaneous time record, which is produced now, and the retainer's own notice (¶ 14) that fee arbitration under Part 137 is available to the Debtor in the event of a dispute — a remedy she remains free to invoke. I do not recall a request for an itemized statement that went unanswered.

**E. Professional conduct**

33. I deny that I have been aggressive or disrespectful toward the Debtor. The Debtor and her family have been under great strain for six years, the litigation has been difficult, and there have been hard conversations about what the evidence would and would not support. I have said things directly. I have not said them disrespectfully, and the Debtor's exhibits do not show otherwise. After the filing of the motion, the Debtor still asked the undersigned to continue to represent her.

**F. The June 18, 2026 hearing**

34. The Court noted on June 18 that I did not appear. I was in India for family emergencies before the Motion was filed on June 10; I retained Paul Hollender, Esq. to appear and request an adjournment, which he did. I regret that I did not arrange to appear remotely, and I apologize to the Court for the inconvenience.

## THE RELIEF REQUESTED BY THE DEBTOR CANNOT BE GRANTED AS FRAMED

35. "Denial of the $50,000 in attorney fees currently being sought." No fees are being sought at present. Claim No. 6 is a placeholder for compensation that can be allowed only upon application under § 330(a)(4)(B), after notice and a hearing, on a consideration of "the benefit and

necessity of such services to the debtor." That application will be filed within thirty days, as stated above, and the reasonableness of the fee can be determined then on a full record. The Motion offers no basis for denying, in advance and without that record, compensation for work whose results are on the docket.

36. "Cessation of payments." No payments are being made. None can be made until a plan is confirmed and a fee is allowed. The request is moot.

37. "Reimbursement of a portion of the $27,000 already paid." Section 329(b) permits the Court to order the return of compensation only "to the extent excessive" — that is, to the extent it "exceeds the reasonable value of any such services." Neither the Motion nor the Trustee's Affirmation contends that the value of Counsel's services is less than $27,000, and it could not be: the recorded time is more than ten times that figure, and the results include an expunged $55,000 claim, a recorded rescission notice, sustained claims against every defendant group, an order restoring the family's utilities, and nearly five years of continued possession of the home against two stay-relief motions. To the extent the Trustee seeks disgorgement as a sanction for incomplete disclosure rather than for excessiveness, that is addressed in the Response, Points I and II. And as the Response explains at paragraph 20, any sum found returnable that was paid by Mr. Stephens from his own funds is, under § 329(b)(2), returnable to him, not to the estate.

**CONCLUSION**

38. For the reasons stated here and in the Response, I respectfully request that the Court (a) deny the Motion; (b) direct Counsel to file the Supplemental Disclosure of Compensation within fourteen days and, upon its filing, deem the requirements of § 329(a) and Rule 2016(b) satisfied; (c) direct Counsel to file an application for compensation under 11 U.S.C. § 330(a)(4)(B) within thirty days, with itemized time records, to be heard on notice to the Debtor and the Trustee,

and reserve for that application the reasonable value of the services and the disposition of the sums received in 2021 and 2023; (d) provide that any award of attorney's fees to the Debtor in the Adversary Proceeding under 18 U.S.C. § 1964(c), N.Y. Gen. Bus. Law § 349(h), N.Y. Real Prop. Law § 265-a, or otherwise shall be credited against the Debtor's obligation to Counsel; and (e) grant such other relief as is just.

39. Annexed hereto are: Exhibit A (Housing Court, HP, and Supreme Court papers and the 2020 notices, 2020–2021); Exhibit B (retainer agreement dated June 2, 2021); Exhibit C (summary of time by year); Exhibit D (December 5, 2022 e-mail chain with signed plan page and consented proof of claim); Exhibit E (excerpt of client narrative, April 2022); Exhibit F (eCourts case summary, LT-059196-20/QU); Exhibit G (plan § 4.3 pages, ECF Nos. 11, 27, 50, 57, 58, 65, and Trustee's Second Affirmation of March 7, 2024, ¶ 1); Exhibit H (Disclosure of Compensation and SOFA ¶ 16, ECF No. 9).

40. I affirm under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
September 13, 2026

Respectfully submitted,

DAHIYA LAW OFFICES LLC

*/s/ Karamvir Dahiya*
Karamvir Dahiya
111 John Street, Suite 1860
New York, New York 10038
(212) 766-8000
karam@dahiya.law
Counsel to the Debtor and Respondent